FILED
CLERK

3/4/2019 4:38 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LUIS FERNANDEZ,

                Petitioner,

    -against-

ANTHONY J. ANNUCCI,

                Respondent.
-------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
17-CV-3943(JMA)

**APPEARANCES:**

Luis Fernandez
201 W. Kingsbridge Road, Apt. 1-J
Bronx, New York 10463
    *Pro se*

John Baptist Latella, III
Nassau County District Attorney's Office
240 Old Country Road
Mineola, NY 11501
    *Attorney for Respondent*

**AZRACK, United States District Judge:**

      Petitioner Luis Fernandez ("Petitioner") filed this *pro se* habeas petition pursuant to 28 U.S.C. § 2254. (the "Petition," ECF Nos. 1, 3.) In response to this Court's Order to Show Cause, Respondent filed a motion to dismiss the Petition as untimely. (ECF No. 6.) The Court subsequently ordered Respondent to refile the motion along with the complete state record. Respondent filed the instant motion on July 10, 2018 with the state court appellate record. (ECF No. 9.) Upon further order from this Court, Respondent filed the state court trial record on December 11, 2018. (ECF No. 12.) For the reasons set forth below, Respondent's motion to dismiss is granted and the Petition is dismissed.

**I. BACKGROUND**

      On September 30, 1992, after a jury trial, Petitioner was convicted of murder in the second

degree and conspiracy in the second degree. Petitioner was sentenced to concurrent terms of twenty-five years to life and eight and one-third to twenty-five years, respectively.

Petitioner's conviction stems from the murder of an attorney named Sergio Taub on August 29, 1991. Louis Barbieri was having an affair with Taub's wife and allegedly coordinated with his employee Pedro Orozco, to hire Petitioner, his brother-in-law Miguel Berroa, and his brother, Zaulo Fernandez ("Zaulo") to murder Taub. At the time of the murder, Petitioner and Zaulo worked as drivers for Christian Brothers Car Service. Witnesses saw a 1984 black Buick LeSabre, with three people in the car, pull away from the murder scene, and identified Zaulo holding a handgun. Christian Brothers Car Service confirmed that Petitioner had been assigned to drive a 1984 black Buick LeSabre on the day of the murder. Several other witnesses testified regarding Petitioner's connection to, and presence at, the murder.

Upon the conclusion of the trial, Petitioner filed a represented direct appeal, alleging that: (1) the evidence was legally insufficient because it was improperly based on uncorroborated evidence; (2) the County Court improperly denied defendant's pre-trial severance motion; and (3) the sentence was excessive. (ECF No. 9-1.) The Appellate Division, Second Department unanimously affirmed Petitioner's judgment of conviction on August 29, 1994. People v. Fernandez, 207 A.D.2d 562 (2d Dept. 1994). Petitioner then sought leave to appeal to the Court of Appeals which was denied on November 15, 1994. People v. Fernandez, 84 N.Y.2d 935 (1994) (Kaye, C.J.).

More than fifteen years later, on December 21, 2009, petitioner filed a 440 motion seeking to vacate his judgment of conviction, arguing that: (1) the evidence before the grand jury and trial was legally insufficient; (2) the prosecutor failed to disclose Brady and Rosario material; and (3) he was denied effective assistance of counsel, for, among other reasons, counsel's failure to call alleged alibi witness Emily Medina. (ECF No. 9-7.) Attached as Exhibit 5 to this motion was

an affidavit by Emily Medina dated December 9, 2009 (the "Medina Affidavit").

In her affidavit, Medina stated that she was a radio dispatcher at Christian Brothers Car Service and that on the evening of August 29, 1991, the date of the murder, Petitioner "kept [her] company at the base" while Petitioner's brother Zaulo used the car that was seen at the murder scene. (Medina Affidavit ¶¶ 2–5.) She further claimed that Zaulo retuned the car to the taxi base at 10:00 p.m. and that she "inform[ed] [Petitioner] at [the] time of his trial" that she was willing to "tell the court this part of the history but everything was done." (Id. ¶¶ 6, 8.)

On December 31, 2014, the County Court denied Petitioner's motion in its entirety. (ECF No. 9-10.) With respect to the Medina Affidavit, the County Court noted that Medina's "expected testimony, which is based on [an] affidavit[] . . . provided more than seventeen years after the defendant's conviction is questionable and/or vague." Id. Petitioner again sought leave to appeal, arguing for the first time that his claim of "actual innocence" required overturning his conviction.[1] (ECF No. 9-11.)

The Appellate Division denied Petitioner's leave to appeal on July 24, 2015. (ECF No. 9-13.) Petitioner then sought leave to appeal to the Court of Appeals. (ECF No. 9-14.) The Court of Appeals dismissed Petitioner's appeal on November 2, 2015. (ECF No. 9-16.)

Approximately five months later, on April 6, 2016, Petitioner applied to the Appellate Division, Second Department for a writ of error *coram nobis* seeking to reopen his appeal on the grounds that his appellate counsel was ineffective. (ECF No. 9-17.) His papers included many attacks on his appellate counsel, including counsel's failure to argue that trial counsel was ineffective for failing to call Medina as an alibi witness. The Appellate Division, Second Department unanimously denied petitioner's application on November 9, 2016. People v. Luis

---

[1] Petitioner briefly references "actual innocence" in reply papers to his 440 motion. (ECF No. 9-9.) However, in his leave to appeal the County Court's denial of the 440 motion, it is the first time there is a clearly stated claim.

Fernandez, 144 A.D.3d 840 (2d Dept. 2016).

Petitioner sought leave to appeal the Appellate Division's order, renewing his contention that he was actually innocent, and that Medina was an available exculpatory alibi witness. (ECF No. 9-21.) The Court of Appeals denied leave to appeal on February 16, 2017. People v. Luis Fernandez, 28 N.Y.3d 1183 (2017) (Rivera, J.). Petitioner then drafted the instant Petition dated June 13, 2017, which was filed with the Court on June 19, 2017. (ECF No. 1.)

## II. DISCUSSION

Petitioner claims he is entitled to relief on various grounds, including his "actual innocence" claim based on the Medina Affidavit. Respondent argues the Petition is untimely and must be dismissed. Petitioner disputes this contention and claims that the Petition is timely.

Because Petitioner is *pro se*, the Court has construed Petitioner's submissions liberally "'to raise the strongest arguments that they suggest.'" Walker v. Graham, 955 F. Supp. 2d 92, 100 (E.D.N.Y. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). However, as explained below, the Court finds the Petition is untimely and that there are no equitable grounds to save the Petition from dismissal.

**A.  Mootness**

While this motion was pending, Petitioner filed a letter informing the Court that he was granted parole and that U.S. Immigration and Customs Enforcement ("ICE") commenced a removal proceeding against him based on the underlying conviction, despite his alleged status as a Lawful Permanent Resident. (ECF No. 10.) Based on the Affidavit of Service, at the time Petitioner wrote this letter, he was located at ICE's Buffalo Federal Detention Facility. (See Id.)

A search of the NYS Department of Corrections and Community Supervision Inmate Population confirms that Petitioner was paroled to U.S. Immigration on September 4, 2018.[2]

---

[2] See http://nysdoccslookup.doccs.ny.gov.

However, a search of the ICE Detainee Locator, using Petitioner's name, date of birth, and country of birth, fails to return any results.[3] Accordingly, it is likely that the removal proceedings have already occurred, and that Petitioner has been deported.

According to the Supreme Court, a petitioner's release from prison does not moot his petition simply because he is no longer "in custody," provided there is still some "collateral consequence" of the conviction. See Spencer v. Kemna, 523 U.S. 1, 14–16 (1998). Being subjected to removal proceedings certainly constitutes a "collateral consequence" of Petitioner's conviction. See Sibron v. New York, 392 U.S. 40, 54–56, (1968) (listing deportation as a potential collateral consequence of a criminal conviction); DeGiorgio v. Fitzpatrick, No. 08-CV-6551, 2011 WL 10501908, at *5 (S.D.N.Y. Mar. 8, 2011), report and recommendation adopted, 2013 WL 978792 (S.D.N.Y. Mar. 12, 2013) (considering a habeas petition despite petitioner's release from prison "because any consequences of [petitioner's] deportation hearing satisfies the collateral consequences requirement").

Moreover, even if Petitioner has been deported, since the Petition challenges the validity of his underlying conviction, to the extent his deportation is based *solely* on this conviction, and prevents him from re-entering the United States, there remains a "collateral consequence" sufficient to preserve a live controversy. See, e.g., Perez v. Greiner, 296 F.3d 123, 126 (2d Cir. 2002) (finding the presumption of collateral consequence applies to deported petitioner but dismissing as moot petitioner's habeas petition because he was permanently inadmissible to the United States for reasons other than the challenged conviction).

Petitioner states that the underlying conviction is the basis of his removal proceedings. (See ECF No. 10.) Nothing in the record corroborates that statement or indicates that the underlying conviction is the *sole* reason for the removal proceedings. However, as the Court is

---

[3] See https://locator.ice.gov.

dismissing the Petition as untimely, it needs not request further clarification on this issue.

B.      **Statute of Limitations and Statutory Tolling**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year limitations period for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to a state court conviction. 28 U.S.C. § 2244(d)(1). The applicable one-year period runs from the latest date on which one of the following four events occurs:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D). AEDPA also provides for tolling of the one-year period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2).

Respondent contends, and the Petitioner does not contest, that sub-sections (B) and (C) are inapplicable to the instant petition. The Court agrees. Nothing in the record suggests that the state imposed any illegal barrier that impeded Petitioner from filing a timely habeas corpus petition, nor that he was in custody in violation of a new, retroactive constitutional right. § 2244(d)(1)(B)–(C).

Construing Petitioner's submissions liberally, the Medina Affidavit might be considered a newly discovered factual predicate, such that sub-section (D) governs the applicable statute of limitations. However, under this section, the statute of limitations period commences when the

prisoner becomes aware of, or, through the exercise of due diligence, should have been aware of, the relevant facts. § 2244(d)(1)(D); see also Wims v. United States, 225 F.3d 186, 190–91 (2d Cir. 2000) (noting that the relevant question is when a duly diligent person in defendant's situation would have discovered the relevant factual predicate).

Medina states that she was with petitioner at the time of the murder, and "inform[ed] him at [the] time of his trial" that she was willing to "tell the court this part of the history but everything was done." (See Medina Affidavit ¶¶ 4, 8.) Thus, Petitioner would have known about this purportedly exculpatory evidence as soon as he was accused of murder. Indeed, as part of Petitioner's ineffective assistance of trial counsel claim, he asserts that "[p]rior to and during the course of trial defense counsel JENKS was informed and became aware of an 'alibi' witness," Medina. (Pet. ¶ 59.) Accordingly, Petitioner was well aware that Medina was a purported alibi witness at the time of his trial and did not "newly discover" this evidence when he procured the Medina Affidavit in 2009. See Brown .v Woods, No. 07-CV-0058, 2007 WL 602301 (E.D.N.Y. Feb. 20, 2007) (noting that the statute of limitations began when petitioner "discovered" co-defendant's willingness to recant, not when he obtained the affidavit).[4]

Sub-section (A) thus governs the timeliness of the petition. 28 U.S.C. § 2244(d)(1)(A). Indeed, Petitioner and Respondent agree with this assessment—they merely dispute when the judgment became "final." Respondent argues that since the NYS Court of Appeals denied Petitioner's leave to appeal on November 15, 1994, People v. Fernandez, 84 N.Y.2d 935 (1994) (Kaye, C.J.), his judgment of conviction became final on February 13, 1995, when the ninety-day period to seek direct review from the United States Supreme Court expired. (ECF No. 9.)

---

[4] Even if there were some argument that this evidence was not discovered until 2009, Petitioner carries the burden of demonstrating due diligence and must explain why he did not act to discover this information earlier. Shabazz v. Filion, 402 F. App'x 629, 630 (2d Cir. 2010). Petitioner has failed to provide any explanation for the significant delay in obtaining the Medina Affidavit.

7

Petitioner contends that his application to the Appellate Division, Second Department for a writ of error *coram nobis* nearly fifteen years later reopened his case. (ECF No. 7.) Though the Appellate Division denied his application, People v. Luis Fernandez, 144 A.D.3d 840 (2d Dept. 2016), Petitioner claims that his judgment of conviction was not final until the Court of Appeals denied his leave to appeal that decision on February 16, 2017. People v. Luis Fernandez, 28 N.Y.3d 1183 (2017) (Rivera, J.).

Petitioner's argument is unavailing. Post-conviction litigation in state courts, if made within one year of a final judgment of conviction, statutorily tolls the limitation period during the pendency of the state-court proceedings. 18 U.S.C. § 2244(d)(2). However, it is well-settled that such collateral attacks on a conviction do not re-start the one-year grace period. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.2000) ("We therefore hold that proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run."); Davis v. Racette, 99 F. Supp. 3d 379, 385 (E.D.N.Y. 2015) ("The post-conviction proceeding, however, does not start the one-year grace period to run anew."). Indeed, the Second Circuit has held that filing a petition for a writ of error *coram nobis* does not re-start an expired statute of limitations. Smith, 208 F. 3d at 17; see also Goodwine v. Lee, No. 10-CV-7556, 2012 WL 3264518, at *4 (S.D.N.Y. May 7, 2012), report and recommendation adopted, 2012 WL 3264494 (S.D.N.Y. Aug. 10, 2012) (noting that 440 and *coram nobis* motions filed long after the statute of limitations expired do not toll the limitations period).

Thus, Petitioner's conviction became final on February 13, 1995 when his time to petition the Supreme Court for a writ of certiorari expired. See Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000) (noting defendant's conviction became final one year from the date the ninety-day period to seek review from the Supreme Court expired); see also S. Ct. R. Rule 13(1); 28 U.S.C.

§ 2244(d)(1)(A). However, this date pre-dates the April 24, 1996 enactment of AEDPA so Petitioner was entitled to a one-year grace period in which to file his petition. Ross v. Artuz, 150 F.3d 97, 102–103 (2d Cir. 1998). Accordingly, Petitioner had until April 24, 1997 to file a petition for a writ of habeas corpus. The instant Petition filed on June 19, 2017, more than twenty years later, is clearly untimely.

## C.  Equitable Tolling

Equitable tolling can save an otherwise time-barred petition. AEDPA's one-year limitations period is subject to equitable tolling only if a Petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 632 (2010) (internal quotation omitted).

Petitioner does not claim that he is entitled to equitable tolling and the record here does not support such an application. Petitioner waited nearly fifteen years after his conviction became final to obtain the Medina Affidavit and file collateral attacks on his conviction. There is no allegation that he was impeded from diligently pursuing his rights during this time. Accordingly, Petitioner is not entitled to equitable tolling.

## D.  Actual Innocence

Actual innocence is an equitable exception to AEDPA's statute of limitations. See McQuiggin v. Perkins, 569 U.S. 383, 392–93 (2013). To "present a successful gateway claim of actual innocence a petitioner must present 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012) (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995)). As the Second Circuit has explained,

> To satisfy the Schlup standard, a claim of actual innocence must be both "credible"

9

and "compelling." For the claim to be "credible," it must be supported by new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. For the claim to be "compelling," the petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

Id. at 514 (internal citations and quotation marks omitted). This "standard is 'demanding and permits review only in the extraordinary case.'" Id. at 542 (quoting House v. Bell, 457 U.S. 518, 538 (2006)).

Here, Petitioner argues that he is entitled to a Writ of Habeas Corpus in part because the Medina Affidavit proves he is "actually innocent." (Pet. ¶¶ 48–56.) However, the Petition does not contain the extraordinary type of credible and compelling evidence to overcome AEDPA's limitations period.

First, the seventeen-year delay between the trial and the date of the Medina Affidavit severely undermines Petitioner's claim. "Unexplained delay in presenting new evidence bears on the determination [of] whether the petitioner has made the requisite showing." McQuiggin, 569 U.S. at 399. And, despite this extreme delay, Medina purports to remember very specific details about the night of the murder such as the numbers of the cars assigned to Petitioner and his brother Zaulo, that Zaulo took Petitioner's car that night, and that the car returned to the dispatch stand after 10:00 PM. (Medina Aff. ¶¶ 3–6.) Together, this weighs heavily against the credibility of the statements in the Medina Affidavit.

Furthermore, even if Medina testified exactly as her affidavit states, a reasonable juror would have to weigh this testimony against the evidence at trial supporting Petitioner's conviction, including:

> (1) testimony from co-conspirator Orozco that he accompanied Barbieri to hire Petitioner and Berroa, spoke to Petitioner various times to coordinate the murder, and paid Petitioner to commit the murder, (Trial Tr. 351–73, 385–86);

(2) that Petitioner's phone number was found in Barberi's garage and address book, and there were records of phone calls between Barbieri's work and Petitioner's number, (Trial Tr. 869–72, 960–66);

(3) testimony from a friend of Petitioner that Zaulo told him about the plan, that he warned them "[n]ot to do something like that, that that was very dangerous," and that Petitioner told him after the crime that "they had killed a lawyer," (Trial Tr. 753–55);

(4) eyewitness testimony identifying Zaulo in the front seat of a 1984 black Buick LeSabre holding a gun and leaving the scene of the crime with two other people in the car, (Trial Tr. 244–50, 256–60, 276–78); and

(5) that Petitioner was assigned to drive a 1984 black Buick LeSabre by Christian Brothers Car Service the day of the murder, (Trial Tr. 727).

Based on the significant evidence supporting Petitioner's conviction, the unexplained delay in obtaining the Medina Affidavit, and the extremely specific details included in the affidavit despite that delay, it is not "more likely than not any reasonable juror would have reasonable doubt" of Petitioner's guilt based on the Medina Affidavit.[5]  Rivas, 687 F.3d at 514.

### III. CONCLUSION

For the reasons stated above, Respondent's motion to dismiss is granted and the Petition is dismissed as untimely.

Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.  See 28 U.S.C. § 2253(c)(2).  The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

---

[5] The Petition relies solely on the Medina Affidavit to support Petitioner's actual innocence claim.  However, the Petition also includes an affidavit from Petitioner's brother, Zaulo, from 1992 attempting to exculpate Petitioner. (The affidavit was also annexed to Plaintiff's 440 motion.)  This is plainly not credible or compelling because he is an alleged co-conspirator and has a clear personal relationship with Petitioner.  And even considering Zaulo's affidavit in conjunction with the Medina Affidavit, compared to the trial evidence, it still does not overcome the high bar of the Schlup standard.

11

The Clerk of Court is directed to enter judgment accordingly, close this case, and mail a copy of this Order to Petitioner.

**SO ORDERED.**

Dated:   March 4, 2019
           Central Islip, New York

    /s/  (JMA)
Joan M. Azrack
United States District Judge